## SUPREME COURT.

ROBERT LEWIN, Respondent agt. THOMAS J. STEWART, im-
pleaded with WILLIAM P. WRIGHT, Appellant.

The "act for the relief of partners and joint debtors," (*Laws of* 1838, *p.* 243,) is
confined to joint actually existing debts. It has no application to a suit where
the object is to establish the debt to be joint, as between the alleged partners;
and, therefore, does not authorize the release of one of the partners so as to ad-
mit him as a competent witness in the suit. (Suit commenced previous to the
Code.)

An *agreement* held to be within the statute of frauds, where one of the parties
had bought a large quantity of cotton and became the actual owners, when
the other party *verbally agreed* to take a share or joint interest in it, as an ad-
venture. The delivery of the cotton on board ship by the vendors of the first
party, held to be a delivery to the latter, and not to the second party, who had
agreed to take a joint interest in the adventure, whether the first party had paid
for the cotton or not. To hold that such a delivery was to the second party by
the first party, so as to take the case out of the statute, would be a palpable
invasion of it.

*New - York General Term, November,* 1858.
*Present,* DAVIES, SUTHERLAND *and* HOGEBOOM, *Justices.*

THIS was an appeal from a judgment given by Mr. Justice
ROOSEVELT, at special term, in 1854, holding Mr. Stewart lia-
ble upon a purchase of cotton or shipment of cotton. Lewin
is the surviving partner of Jonathan Ogden & Co., by whom
the suit was originally brought. The suit was commenced in
the late court of chancery in 1844, (14 years ago,) and the ob-
ject was to establish a liability on the part of the firm of Stew-
art & Wright, for half the loss on a shipment of cotton of about
285 bales, made by Jonathan Ogden & Co., who allege that
they made the shipment as a joint adventure of the two firms;
and Stewart alone defended, on the ground that he had not
consented to take any interest in the shipment.

CHARLES O'CONOR, *for appellant.*
WM. CURTIS NOYES, *for respondent.*

By the court—SUTHERLAND, Justice. The principal questions discussed on the argument of this case were:

1. Whether any agreement between Ogden & Co., and Stewart & Wright, is admitted by the answer of Stewart, or is established by the proofs, or can be judicially deduced from both ?

2. If any agreement between those firms is so established or can be deduced, what was the agreement? Was it an absolute agreement on the part of Stewart & Wright to purchase or take an interest absolute in the 285 bales of cotton which had been bought by Ogden & Co., without reference to its quality, or to its being of a grade known in the market as "fair ?" or was it a conditional agreement; that is, an agreement to purchase or to take an interest if the cotton was of the grade called "fair," as represented by Lewin?

3. Is the case within the statute of frauds, so that if an agreement to purchase on the part of Stewart & Wright a share or interest, or a sale to them of a share or interest in the cotton, is admitted by the answer or established by the proofs, yet there being no written evidence of such agreement to purchase or of such sale, the plaintiff cannot recover?

In the view I have taken of the case, it will be necessary to examine the first and the last of these questions, and perhaps only the first. It is conceded that the ordinary partnership business of Stewart & Wright, did not extend to this transaction, so that Wright could bind Stewart or the firm without Stewart's authority and consent. What is the evidence then of an agreement by Stewart & Wright to take an interest in the adventure, or to purchase an interest or share in the cotton, or of a sale to Stewart & Wright of a share or interest by Ogden & Co.? There is no written evidence. The evidence of witnesses as to what passed in one conversation between plaintiff and defendant is all the evidence. There was no entry of the transaction in Stewart & Wright's books. No invoice, bill or memorandum of the transaction, was furnished by Ogden & Co., to Stewart & Wright. Ogden & Co. paid for the cotton the 23d of March, 1844, but never called upon

Lewin agt. Stewart.

Stewart & Wright for their share of the cost price. The witnesses are three : Wright and Dunham for plaintiffs, Joyce for defendant. Notwithstanding Stewart's objections, Wright was admitted as a witness. The Code has no application to the question of Wright's admissibillity, for the proofs were taken and closed in 1846. Wright had permitted the bill to be taken against him as confessed in November, 1844.

In December, 1844, Ogden & Co. executed to Wright a written instrument or release, as upon a separate compromise, pursuant to the " Act for the relief of partners and joint debtors," (*Laws of* 1838, *p.* 243,) exonerating him from all individual liability incurred by reason of his connection with the firm of Stewart & Wright, or by reason of any liability with the said Stewart, of and concerning the transaction as to the cotton. It is claimed that this made Wright a competent witness. I think it did not. The very question in the case was whether Wright had entered into the transaction as to the cotton with or without the consent of Stewart? If Stewart did not consent to the adventure, Wright stood confessed as individually liable, as having gone into the transaction without any authority from his partner. If the plaintiffs did not succeed in this suit the statutory exoneration would have no effect. The plaintiffs could, notwithstanding the instrument of exoneration, and on Wright's own confession, recover the whole amount from Wright, on the ground that it was not a partnership transaction of Stewart & Wright, but an individual transaction of Wright's. The statute of 1838 is confined to joint actually existing debts. The object of this suit, and of introducing Wright as a witness, was to establish the debt to be joint. I think Wright was inadmissible as a witness, and that his testimony must be considered as out of the case, and it would hardly be considered that the testimony of the other two witnesses proves any consent or agreement of Stewart. Dunham says, the conversation was between plaintiff and Wright; that Stewart was in the room a portion of the time, but he docs not swear positively that Stewart heard anything that was said. (Stewart is partially deaf.) Joyce says, plain-

tiff came to Stewart & Wright's place of business with a sample of cotton, and proposed to Stewart to take an interest in a lot, of which that was a sample, and that all three—the plaintiff, Stewart and Wright—went into the office or counting-room together, and he (Joyce,) remained outside, and heard no more. I do not think that these witnesses prove the consent or agreement on the part of Stewart.

Now let us look at the bill and answer. The bill alleges that Ogden & Co. had purchased the cotton, and that Stewart & Wright hearing of the purchase, and that Ogden & Co. intended to ship it, requested of one of the plaintiffs, (either of Ogden or Lewin,) a half share or interest in the cotton, to which Ogden & Co. agreed, and that thereupon Ogden & Co. became jointly interested with Stewart & Wright, in said adventure of cotton—Stewart & Wright being entitled to one-half of the profits, if any, and liable to one-half the losses. This is the way in which the agreement is alleged in the bill. The answer of Stewart alleges that Stewart & Wright were cotton brokers, and not cotton buyers; denies the authority of Wright to bind Stewart in the transaction; and as to the request of Stewart & Wright for a half share or interest in the cotton, and the consent of Ogden & Co. upon which it is alleged in the bill a partnership in the shipment of cotton was created between Stewart & Wright and Ogden & Co., the answer alleges: That at about the time mentioned in the bill, he (Stewart) was solicited to take an interest in a shipment of cotton which Ogden & Co., were about to make to Liverpool, consisting of a large number of bales—say about 285—of which over nine-tenths were what is termed "round bales," but that he never consented to take any interest therein, otherwise than conditionally, and upon inducements of false representations—that is to say, Lewin at the time represented the cotton to be all of one uniform quality, known in the trade as the grade "fair," a quality then worth in the market, if in square bales, from 9c. to 9½c. per pound; that he exhibited a sample which was of that quality, and stated that each bale was on an average equal to such sample in style, quality and value; that

such statement was intentionally false ; that Lewin thereupon urged Stewart to join Wright in taking a share or interest, to which he replied : " That if the cotton was equal to that sample he would be interested, otherwise not ;" and that he (Stewart) " did not, in any other way consent to take such an interest."

Now is this an admission of the agreement set up in the bill ? I think not. It is only an admission that he (Stewart) was willing, and said he was willing, to enter into an agreement and join Wright in taking a share or interest in the cotton, if the cotton was equal to the sample. It does not appear from this statement in the answer, that there was a meeting of minds, and the bargain concluded. And such a meeting of minds and definite agreement scarcely follows from the allegations in the bill. The request to have an interest according to the bill was made either to Ogden or Lewin, to only one of the sellers by both of the buyers. Is it probable that thereupon—immediately—the proposition was accepted by both the sellers as alleged ? But if an agreement or sale is alleged in the bill with sufficient certainty, I think that such an agreement is not admitted by the answer or established by the proofs so as to authorize the judgment at special term. In this view of the case it is unnecessary to examine the question of the application of the statute of frauds. But I will say that I do not see why the case is not within the statute. Admit the plaintiff's case, and Ogden & Co. had bought the cotton when Stewart & Wright agreed to take the interest in it. Ogden & Co. did not buy it as the agents of Stewart & Wright, or with the joint funds of the two firms, or as partners of Stewart & Wright in that particular adventure. As between the two firms, Ogden & Co. were the owners of the cotton when the alleged agreement was made that Stewart & Wright should have a share or interest whether Ogden & Co. had actually paid for the cotton or not, or whether it had been then actually delivered on board the ship or not. As between the parties from whom Ogden & Co. had bought, and Ogden & Co., the delivery on board the ship was a delivery to Ogden & Co.,

and not to Stewart & Wright.    To hold that it was a delivery to Stewart & Wright by Ogden & Co., so as to take the case out of the statute, would in my opinion, be a palpable invasion of the statute.

The judgment at special term should be reversed, and there should be a new trial with costs to abide the event.